UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| FREDRICK GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00276-JPH-DLP |
| | ) | |
| J. E. KRUEGER, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Interested Party. | ) | |

**Order Granting Defendants' Motion for Summary Judgment,
Denying Plaintiff's Supplemental Motion, and Directing Entry of Final Judgment**

Plaintiff Fredrick Graham, an inmate currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania, asserts multiple claims based on events that are alleged to have occurred while he was incarcerated at the Federal Correctional Complex in Terre Haute, Indiana (FCC-TH). The defendants seek summary judgment as to all claims, arguing that Mr. Graham failed to exhaust his available administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Mr. Graham has responded to the defendants' motion, and the defendants' have submitted a reply. For the following reasons, the motion for summary judgment, dkt. 69, is granted.

**I.
Legal Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable

1

substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

## II.
## Statement of Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Graham as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A. Evidence Considered

As a preliminary matter, the Court addresses Mr. Graham's responses to the defendants' motion for summary judgment. Mr. Graham makes factual assertions in his surreply, but does not designate supporting admissible evidence. "Admissibility is the threshold question because a court

2

may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). An unsworn pleading that is not signed under the penalty of perjury is inadmissible for purposes of defeating a motion for summary judgment. *See Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). Similarly, the Local Rules of the Southern District of Indiana require that each fact asserted must be supported with a citation to admissible evidence. *See* S.D. Ind. Local Rule 56-1(e); *see also* dkt. 71 (notice providing text of Local Rule 56-1). Because Mr. Graham's responses are neither affidavits nor verified, the Court cannot consider the factual allegations contained therein.

### B. Federal Administrative Remedy Procedure

The Federal Bureau of Prisons ("BOP") maintains an administrative remedy procedure, *see* 28 C.F.R. §§ 542.10 *et seq.*, and FCC-TH has promulgated an Institution Supplement with additional information. Upon arrival at FCC-TH, an inmate participates in an orientation that includes an explanation of the administrative remedy process and instructions on how to use the law library to access BOP policy and the facility-specific supplements.

When an inmate submits an administrative remedy request, facility staff log it into the BOP's electronic record system, the SENTRY database. Each entry receives a remedy identification number and includes the inmate's Federal Register Number and a short description of the request that often contains abbreviations due to limited space. Through the SENTRY database, facility staff have access to all of an inmate's administrative remedies in a single document.

The federal administrative remedy procedure requires inmates to first attempt to resolve a complaint informally through a submission commonly referred to as a "BP-8." Because this is an

3

informal attempt at dispute resolution, it is not recorded in the SENTRY database. If the informal resolution is not successful, an inmate may file a formal complaint with the Warden within twenty days of the date on which the alleged underlying incident occurred by filing a "BP-9." The SENTRY database identifies BP-9 submissions with the notation "F1" after the remedy identification number.

If an inmate is not satisfied with the Warden's response to his BP-9 submission, he may appeal to the Regional Office through a submission referred to as a "BP-10." The SENTRY database records BP-10 submissions with an "R1" notation following the remedy identification number. If the Regional Office's response is unsatisfactory, an inmate may further appeal to the General Counsel through a submission called a "BP-11." The SENTRY database identifies BP-11 submissions with the notation "A1" after the remedy identification number. This is the final administrative appeal.

**C. Mr. Graham's Use of the Administrative Remedy Procedure**

Mr. Graham was incarcerated at FCC-TH from October 23, 2017, to October 16, 2018. He submitted nine administrative remedy requests between October 23, 2017, and June 19, 2018—the day he filed this action. Five of those requests are relevant to the allegations in Mr. Graham's complaint.

**1. Remedy Request No. 925190**

Mr. Graham initiated Request No. 925190 on December 2, 2017, with a handwritten informal resolution request. He alleged that he was deprived of "basic life necessities while on A-Range in hard cell." Dkt. 85-1 at 2. Four days later, on December 6, 2017, Mr. Graham submitted a BP-9 to the Warden raising the same concerns about the conditions of his confinement. In the BP-9, he asked that the named staff be fired and that hard cell status and A-Range be shut down.

The Warden responded on January 25, 2018, and informed Mr. Graham that the allegations against staff would be reviewed, but that Mr. Graham would not receive information regarding the investigation. Mr. Graham was notified of his right to appeal and reminded of the timeline to do so.

Construing the facts in the light most favorable to Mr. Graham, he appealed the Warden's response to the BP-9 by submitting the BP-9, not a BP-10, to the Regional Office on March 14, 2018. The submission was rejected as untimely, and Mr. Graham was instructed to provide staff verification that the untimeliness was not his fault. Mr. Graham took no further action with respect to Request No. 925190.

### 2. Remedy Request No. 932399

On January 29, 2018, Mr. Graham completed a BP-9 concerning the handling of his mail, alleging that staff members refused to mail his legal mail. He asked that these staff members be reprimanded, fired, or "face liability promptly." Dkt. 85-3 at 3. The Warden informed Mr. Graham that the allegations would be investigated but that he would not receive information regarding the outcome. The Warden also notified Mr. Graham of his right to appeal and the timeline for doing so. Mr. Graham took no further action with respect to Request No. 932399.

### 3. Remedy Request No. 933356

Mr. Graham submitted a BP-8 on February 16, 2018, asserting that two correctional officers hid legal materials, including trial transcripts, during the direct appeal of his criminal conviction. He asked that the correctional officers be reprimanded or fired. The correctional officers denied having any of Mr. Graham's property.

Mr. Graham completed a BP-9 about these same allegations. The Warden indicated the matter would be reviewed and notified Mr. Graham that monetary damages are not available

through the administrative remedy process. Again, Mr. Graham was notified of his right to appeal and the timeline for doing so. He took no further action with respect to Request No. 933356.

### 4. Remedy Request No. 934227

On February 19, 2018, Mr. Graham completed a BP-9 containing several complaints about facility staff. As relevant to this action, Mr. Graham claimed that the BP-9 he completed on December 6, 2017 (Request No. 925190) was not processed because he never received a response. This BP-9 was rejected as incorrectly filed with the Regional Office because it contained no sensitive material. Mr. Graham took no further action with respect to Request No. 934227.

### 5. Remedy Request No. 944132

Mr. Graham submitted a BP-9 on June 7, 2018, claiming that Lieutenant Wingerd and Correctional Officer Robertson had entered his cell on May 21, 2018, and physically assaulted him. He requested that Lieutenant Wingerd and Correctional Officer Robertson be fired. The Warden responded, notifying Mr. Graham that the matter would be investigated and that Mr. Graham would not receive information about the outcome of the investigation. The response referenced Mr. Graham's right to appeal and the timeline for doing so. Mr. Graham took no further action with respect to Request No. 944132.

## III.
## Discussion

The defendants assert that Mr. Graham's claims are procedurally barred due to his failure to exhaust the administrative remedies available to him. Mr. Graham responds that he exhausted his claims and to the extent he failed to do so, such failure was caused by prison officials preventing him from completing the process. Dkt. 78 at 4-5.

### A. Exhaustion

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)); *see also Ross v. Blake*, 136 S. Ct. 1850, 1857-58 (2016) (explaining why "all inmates must now exhaust all available remedies" and concluding that "[e]xhaustion is no longer left to the discretion of the district court" (internal quotation marks and citation omitted)).

The defendants have met their burden of establishing that Mr. Graham did not complete the administrative remedy process as required by the PLRA. Although Mr. Graham filed several administrative remedy requests addressing the claims in his complaint, he failed to pursue those requests to completion. Of the five relevant requests, only one, Request No. 925190, was appealed to the Regional Office, and that appeal was neither on the proper form nor timely. Additionally, none of the requests were appealed to the General Counsel. Mr. Graham did not exhaust his administrative remedy requests.

### B. Availability

While the PLRA has a strict exhaustion requirement, it also "contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858.

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 1858 (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted). It is the defendants' burden to establish that the administrative process was available to Mr. Graham. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The defendants have satisfied their burden of showing that the administrative process was available to Mr. Graham. An inmate receives an explanation of the administrative remedy process and instructions on how to use the law library to access BOP policy and the facility-specific supplements upon arrival at FCC-TH, and the defendants submitted evidence that Mr. Graham used the BOP system and procedures to submit administrative remedy requests. Therefore, the administrative remedy process was "available" to Mr. Graham.

Mr. Graham's factual allegations do not change the result. First, he contends that Lieutenant Sherman "withheld" over fourteen remedy requests for the entire exhaustion period. Dkt. 78 at 4. But Mr. Graham does not explain whether the withheld requests are the same requests that are relevant to the claims in his complaint. The unauthenticated printout of requests that Mr. Graham attached to his response include some of the relevant requests, but this printout does not indicate which requests were withheld. Mr. Graham's vague allegation, which is unsupported by admissible evidence, does not create a triable issue of fact.

Similarly, Mr. Graham asserts that facility staff "refuse to follow [the] grievance process." Dkt. 78 at 4-5. Although exhaustion is not required when "prison administrators thwart inmates

8

from taking advantage of a grievance process," *Ross*, 136 S. Ct. at 1860, Mr. Graham does not explain how or when facility staff refused to follow the procedures. Consequently, it is unclear whether the alleged refusal made the administrative remedy process unavailable prior to Mr. Graham filing this action.

For example, as part of this allegation, Mr. Graham states that he asked to "e-file" his grievances and to have a Regional Office staff member stationed at every BOP facility to ensure prison staff did not tamper with grievances. Dkt. 78 at 4. These requests are not part of the administrative remedy process developed by the BOP, and Mr. Graham must follow the procedures developed by the prison. *See Dole*, 438 F.3d at 809 (recognizing a "strict compliance approach to exhaustion" that requires a prisoner to "properly use the prison's grievance process"). A refusal to accommodate Mr. Graham's requests does not render the process unavailable to him.

Additionally, it is unclear whether the alleged refusal to comply with the process occurred when Mr. Graham originally filed his requests or whether the refusal to comply occurred after he filed this action. Mr. Graham states that facility staff "can refuse" to provide and mail forms and that his current counselor "refuses to allow [him] to exhaust." Because the PLRA requires a prisoner to exhaust his administrative remedies *before* filing an action, *Ross*, 136 S. Ct. at 1856, the fact that Mr. Graham's counselor is currently refusing to allow him to exhaust or could refuse to provide or mail forms in the future does not excuse his failure to completely exhaust the available administrative remedy process with respect to the requests he submitted before filing this action.

### IV.
### Conclusion

The defendants have designated evidence showing that Mr. Graham failed to exhaust available administrative remedies before filing this lawsuit. Under Section 1997e(a), this action

9

should not have been brought and must be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice").

The defendants' motion for summary judgment, dkt. [69], is **granted**. This action is **dismissed without prejudice**.

The plaintiff's supplemental motion, dkt. [83], is **denied as moot**.

Final judgment shall now issue.

**SO ORDERED.**

Date: 10/3/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

FREDRICK GRAHAM
27970-044
LEWISBURG - USP
LEWISBURG U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1000
LEWISBURG, PA 17837

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov